W. N. HARRELL, J. T. BARNES, G. T. LAMM AND RONEY WILLIAMSON, RESIDENTS AND TAXPAYERS OF THE COUNTY OF WILSON, NORTH CAROLINA, IN BEHALF OF THEMSELVES AND OTHER TAXPAYERS OF SAID COUNTY WHO DESIRE TO MAKE THEMSELVES PARTIES HERETO, v. THE BOARD OF COMMISSIONERS OF THE COUNTY OF WILSON.

(Filed 21 March, 1934.)

1. **Counties E b—County may issue bonds for necessary repairs to county jail.**

    The county commissioners of a county are given power to erect and purchase a jail and to levy taxes necessary to pay for same, and if the power to make needed and necessary repairs is not expressly given by

the County Finance Act, chap. 81, sec. 8, Public Laws of 1927, it is necessarily implied from the larger powers therein enumerated, C. S., 1290, and taxpayers of the county cannot successfully maintain a suit to restrain the issuance of bonds for necessary repairs to the county jail and to enjoin the levy of taxes necessary to pay the principal and interest on such bonds. C. S., 1297(9), 1317.

**2. Same—County may issue bonds to repair and make additions to public schools of county.**

Counties are given authority, as administrative agencies of the State, in the maintenance of the constitutional school term, to erect and purchase school houses and the land necessary therefor, chap. 81, sec. 8, Public Laws of 1927, and the power to make repairs and additions to school buildings is necessarily implied from the powers granted, and the county may issue its bonds necessary for such repairs and additions and levy taxes to pay principal and interest on the bonds.

APPEAL from *Barnhill, J.*, 27 January, 1934. From WILSON. Affirmed.

This is an injunctive proceeding brought by plaintiffs, taxpayers, against the defendant to restrain it from issuing certain bonds. For a first cause of action, the plaintiffs allege: "At a session of the defendant board of commissioners for the county of Wilson, duly held at the courthouse in Wilson, North Carolina, on 6 November, 1933, a resolution was adopted by said defendant, having for its purpose the raising of a sum of money in excess of fifteen thousand dollars, for the purpose of providing funds with which to repair the jail owned by the county of Wilson. The said resolution contemplates, and the defendant intends to raise twelve thousand dollars of said sum by issuing and selling bonds of the county of Wilson as general obligations of said county; and for the payment of the principal and interest of said bonds the defendant proposes and intends to pledge the faith and the credit of the county of Wilson and to levy a tax on the taxable property in Wilson County, sufficient to meet and pay the interest and principal of said bonds."

For a second cause of action, the plaintiffs allege: "At a meeting of the defendant, duly held in the courthouse in the town of Wilson on 11 January, 1934, a resolution having for its purpose the issuance and sale by the defendant of thirty thousand dollars of the serial bonds, general obligations of the county of Wilson, for the purpose of providing funds with which to repair a Negro school building, build a Negro school building and add to the Winstead school building in the Wilson city unit, was duly adopted and passed. The plaintiffs are informed and believe, and upon such information and belief, allege that the proceeds arising from the sale of said bonds would be used for the following purposes: (a) For the erection of a school building for the use of the public schools of Wilson County; (b) For constructing and erecting an addition of five rooms to a school building, a part of the unit of the town of

Wilson, and known as the Winstead School. (c) For the replacement of toilet fixtures in a school building already constructed."

The judgment of the court below is as follows: "The above entitled cause coming on to be heard before the undersigned judge at Rocky Mount, this 27 January, 1934, and was heard by consent of all parties at said time and place. The plaintiffs moved the court for judgment as prayed for in the complaint upon the pleadings. The defendants moved the court that this action both as to the first and second cause of action be dismissed upon the pleadings. After giving the motions due consideration, the court being of the opinion that the defendants have ample power and authority to issue bonds and sell the same for the purpose of repairing the common jail of the county and also that the defendants have ample power and authority to issue bonds and sell the same for the purpose of making additions to the public schoolhouses and repairs thereto in Wilson County; It is, therefore, ordered that this action be dismissed and that the plaintiffs be taxed with the costs. Rocky Mount, North Carolina, this 27 January, 1934. M. V. Barnhill, resident judge of the Second Judicial District."

The plaintiffs excepted and assigned error to the judgment as signed, and appealed to the Supreme Court.

*W. A. Lucas for plaintiffs.*
*Connor & Hill for defendant.*

CLARKSON, J. The questions involved: May the defendant "the board of commissioners for the county of Wilson" (a) Issue bonds to repair the common jail of the county? (b) Issue bonds to repair and make additions to public school buildings in the county? These questions must be answered in the affirmative.

In regard to the first question. N. C. Code of 1931 (Michie), sec. 1321(a) (Public Laws, 1923, chap. 143, sec. 1): "The board of commissioners of the various counties throughout the State are authorized and empowered to issue bonds or notes for the purpose of borrowing money with which to erect, build, construct, alter, repair and improve courthouses and jails, and to purchase the necessary equipment and furniture to be used therein."

In the county finance act, Public Laws, 1927, chap. 81, sec. 8, is the following: "The special approval of the General Assembly is hereby given to the issuance by counties of bonds and notes for the special purposes named in this section, and to the levy of property taxes for the payment of such bonds and notes and interest thereon. Accordingly, authority is hereby given to all counties in the State, under the terms and conditions herein described, to issue bonds and notes, and to levy

property taxes for the payment of the same, with interest thereon, for the following purposes, including therein purchase of the necessary land and, in the case of building, the necessary equipment: (a) Erection and purchase of schoolhouses. (d) Erection and purchase of courthouse and jails, including a public auditorium within and as a part of a courthouse." Section 43 of the County Finance Act: "All acts and parts of acts, whether general, special, private or local, authorizing or limiting or prohibiting the issuance of bonds or other obligations of a county or counties, are hereby repealed," etc.

In rewriting the County Finance Act, the word "repair" was left out. N. C. Code of 1931 (Michie), section 1290, is as follows: "Every county is a body politic and corporate, and has the powers prescribed by statute, *and those necessarily implied by law,* and no others; which powers can only be exercised by the board of commissioners, or in pursuance of a resolution adopted by them." (Italics ours.)

C. S., 1297, is as follows: "The boards of commissioners of the several counties have power." (9) "To erect and repair county buildings.— To erect and repair the necessary county buildings and to raise, by taxation, the moneys, therefor."

C. S., 1317: "There shall be kept and maintained in good and sufficient repair in every county a courthouse and common jail, at the expense of the county wherein the same are situated. The boards of commissioners of the several counties respectively shall lay and collect taxes, from year to year, as long as may be necessary, for the purpose of building, repairing and furnishing their several courthouses and jails, in such manner as they think proper; and from time to time shall order and establish such rules and regulations for the preservation of the courthouse, and for the government and management of the prisons, as may be conducive to the interests of the public and the security and comfort of the persons confined."

C. S., 1302: "If any county commissioner shall neglect to perform any duty required of him by law as a member of the board, he shall be guilty of a misdemeanor, and shall also be liable to a penalty of two hundred dollars for each offense, to be paid to any person who shall sue for the same." *Moffitt v. Davis,* 205 N. C., 565.

In *Jackson v. Commissioners,* 171 N. C., 379 (382), it is said: "The building of a courthouse is a necessary county expense, and the board has full power, in their sound discretion, to repair the old one or to erect a new one, and in order to do so they may contract such debt as is necessary for the purpose. *Vaughn v. Commissioners,* 117 N. C., 429; *Brodnax v. Groom,* 64 N. C., 244; *Haskett v. Tyrrell Co.,* 152 N. C., 714. It should be borne in mind, however, by the county commissioners that while they are clothed with the necessary power to contract such

HARRELL *v.* COMMISSIONERS OF WILSON.

indebtedness, they have no power to levy a special tax out of which to pay the interest and create a sinking fund, unless they have the special authority of the General Assembly." *Spitzer v. Commissioners,* 188 N. C., 30.

It is the duty of the county commissioners to provide a sufficient courthouse and keep it in repair. It is their duty both to erect and keep in repair. They are cognate duties, and failure as to them is "neglect of duty." *S. v. Leeper,* 146 N. C., 655.

The plaintiff contends: "There is nothing unreasonable in the proposition that a local unit may be given the power to pledge the future to build a necessary public building but that it is limited to current income to keep the building in repair after erected."

We think this contention of plaintiff too narrow. Special approval of the General Assembly is given to levy tax for the "Erection and purchase of schoolhouses" and "Erection and purchase of courthouse and jails." We think the greater power includes the lesser, to repair and make additions. The power is given, we think, by statute to the county commissioners, but is "necessarily implied by law." C. S., 1290, *supra.* The commissioners could be indicted and if convicted, imprisoned under the *Leeper case, supra,* for not keeping the jail in repair, yet they could build a new one and not repair the old, would lead to an absurd construction when all the statutes on the subject are considered *in pari materia. Moffitt case, supra.* In 25 R. C. L., p. 1019, we find: "If the language employed admits of two constructions, and according to one of them the enactment would be absurd if not mischievous, while according to the other it will be reasonable and wholesome, the construction which will lead to an absurd result should be avoided." In the record the report of the grand jury at September Term, 1933, shows in regard to the jail "found conditions there very deplorable" and recommended "repairs."

As to the second question: Issue bonds to repair and make additions to public school buildings in the county. We think *Evans v. Mecklenburg County,* 205 N. C., 560, is decisive at p. 564 and 565: "The county of Mecklenburg is an administrative unit in the public school system. The Constitution directs that each county of the State shall be divided into a convenient number of districts in which one or more public schools shall be maintained at least six months in every year. Art. IX, sec. 3. By reason of this mandate it is within the power of the General Assembly to authorize and direct the counties of the State as administrative units or governmental agencies to provide the necessary funds by taxation or otherwise. *Tate v. Board of Education,* 192 N. C., 516; *Frazier v. Comrs.,* 194 N. C., 49. Specific authorization for this purpose is found in section 8 of the County Finance Act: 'The special approval

of the General Assembly is hereby given to the issuance by counties of bonds and notes for the special purposes named in this section, and to the levy of property taxes for the payment of such bonds and notes and interests thereon.' Among the enumerated purposes are the erection and the purchase of school houses, which by the express terms of the statute, include purchase of the necessary land and in the case of building, provision for necessary equipment and facilities. Public Laws, 1927, chap. 81, sec. 8. The resolutions of the county board of education and of the board of county commissioners include in the proposed improvements an auditorium for West Charlotte High School, a new shop for the Technical High School and for Hoskins Rural School and Oakdale Rural School sewage disposal plants, together with toilet facilities for the latter institution. As to these, we are of opinion that the auditorium and the shop are component parts of a general system and in a modern school are often no less serviceable than rooms for classes, and that provision for sanitation is a measure suitable and frequently indispensable to the promotion and preservation of the health of the pupils and to the general efficiency of the school. The order of the board of county commissioners is within the contemplation of the recent act."

We think that the power to "erect" schoolhouses would undoubtedly give the right to make additions and "repair" would be included in the greater "erect." It is not disputed that the bonds are in the statutory limitations. For the reasons given, the judgment of the court below is

Affirmed.